HALL, Judge.
Plaintiffs filed suit seeking to enjoin the defendant, New Hotel Monteleone Inc., and the defendant, Bienville Club, from constructing a carnival parade reviewing stand in front of plaintiffs’ place of business during the 1970 carnival parade period and during carnival parade periods for the years subsequent to 1970.
Judgment was rendered denying plaintiffs’ application for a preliminary injunction and plaintiffs appealed.
The record reveals the following facts:
Plaintiffs, Mr. and Mrs. Vance H. Evans, own and operate “The Fashion Post”, a retail store for ladies and mens wearing apparel, situated on the ground floor of 228 Royal Street in the City of New Orleans. Since this is obviously a community endeavor and since only Mr. Evans testified at the trial we shall hereafter, for convenience, refer to the parties plaintiff in the singular.
The defendant, Bienville Club, is a nonprofit social organization, which has its club rooms on the second floor of 228 Royal Street immediately above plaintiff’s store. Both the plaintiff and the defendant, Bienville Club, rent the premises which they occupy from the defendant-owner, New Hotel Monteleone Inc.
On May 3, 1967, Bienville Club addressed a letter to its lessor, New Hotel Monteleone Inc., which reads as follows:
“The Board of Directors of the Bien-ville Club has voted to erect carnival parade reviewing stands along Royal Street during the 1968 parade season, and annually thereafter, provided the necessary permits can be obtained.
‘It is contemplated, for the first year, that the stands would be approximately 50 feet long, extending from the Iber-ville Street end of the Bienville Club balcony up Royal Street, and 4 or 5 tiers deep. The stands would be erected for a period of about three weeks and would have a pedestrian tunnel with a vertical clearance of approximately 8 feet and a horizontal clearance of approximately 4 feet, and would not interfere in any way with the ingress and egress of your Royal Street tenants.
“On behalf of the Bienville Club, then, permission of the Monteleone Hotel to erect such parade reviewing stands is formally requested.”
On May 4, 1967 the hotel addressed the following letter to plaintiff:
“We recommend permission being granted the Bienville Club to erect carnival parade reviewing stands as requested in their letter of May 3rd, copy attached.
“Please indicate your agreement by signing and returning attached copy of this letter.”
attaching thereto a copy thereof and enclosing therewith a copy of Bienville Club’s letter to it dated May 3, 1967.
On May 11, 1967 plaintiff agreed to the erection of the stands by signing the attached copy of the hotel’s letter of May 4, and returning it to the hotel as requested.
On May 16, 1967 the defendant hotel wrote a letter to Bienville Club giving its permission as owner of the building for the erection of the stands and enclosed photostatic copies of the letters sent to plaintiff and its other tenants on which they had indicated their approval.
As of May 11, 1967, the date plaintiff agreed to the erection of the stands, plaintiff was occupying the ground floor of the premises 228 Royal Street under a lease from the defendant hotel which was due to terminate on April 30, 1968. This lease contained no effective renewal option but *580 plaintiff subsequently obtained a new lease on the premises commencing on the 1st day of May 1968 and ending on the 30th day of April 1971 with an option to renew for an additional thirty-six months. This lease was executed on May 31, 1968.
Acting on the agreement set forth in the above quoted correspondence, Bienville Club obtained the necessary building permits and caused to be erected and made use of a carnival parade reviewing stand during the 1968 carnival parade period which lasted about three weeks. The stand was erected substantially in accordance with the dimensions set forth in its letter of May 3, 1967 and did not interfere with ingress or egress to and from plaintiff’s store.
Prior to the 1969 carnival season plaintiff made the contention that the method of erection of the stands effectively blocks the view of its display windows and constitutes an unreasonable interference with its business. As a result of this contention all of the parties to this suit entered into an agreement dated January 13, 1969 permitting the erection of the parade reviewing stand for the 1969 carnival season but agreeing to undertake negotiations (a) to resolve the differences between them relative to the right of the hotel to permit the Club to erect the stand in front of plaintiff’s premises in future years and (b) relative to the method of erection of the stands. Each party to this agreement reserved all its rights in the event they were unable to resolve their differences.
The parties were unable to come to any agreement and Bienville Club made known its intention to erect the stand for 1970 and future carnival parade periods using substantially the same method of construction used in 1968 and 1969. This injunction suit followed.
Plaintiff seeks to enjoin the erection of the stands during the 1970 and subsequent carnival parade seasons, his principal contention being that the mode of construction of the reviewing stands as erected in 1968 and 1969 and which will be used by Bien-ville Club in 1970 and future years results in blocking the view of plaintiff’s two display windows from persons walking along the Royal Street sidewalk. Plaintiff introduced photographs which show that the frame work of the stands is made of metal piping and that the vertical stanchions which are footed in the sidewalk are supported by cross braces some of which cross close to, and in front of, plaintiff’s display windows.
The record reveals that this is the type of construction which had been, and was, in general use in other parade stands in the commercial section of New Orleans. Plaintiff was undoubtedly familiar with this type of construction and made no inquiries or suggestions at the time he agreed to the erection of the stands above the front of his store. Moreover he admitted that following the 1968 carnival parade season (Mardi-Gras fell on February 27th that year) he made no protest or objection to the manner or mode of erection of the stand until “a long time later, months, months later” when he mentioned to the management of the hotel “that these stands are rough on us.”
Both of the defendants contend that plaintiff is bound by his agreement as contained in the hereinabove quoted correspondence and that the stands are constructed substantially in accord with Bienville Club’s letter of May 3, 1967 and in accordance with the building code of the City of New Orleans. Plaintiff’s answer to defendant’s contention is that his agreement to the erection of the stands did not constitute a contract but was a mere permit unsupported by any consideration whatever, and that in any event it was limited to the term of his initial lease which expired on April 30, 1968, and that when the new lease was signed he refused to sign a similar agreement which the hotel presented to him.
It is clear from the record that when plaintiff granted permission to the Bienville Club by signing the requested letter dated *581 May 4, 1967, he intended to occupy the premises for many years beyond the expiration date of his initial lease. As a matter of fact he testified that he had an option to renew this lease for a period of three years and that he intended to exercise his option and stay there. [However, a reference to this lease shows that the option therein contained was ineffective because the rental was not specified, the words “at the same rental” being stricken therefrom.] The record reveals however that at the time he signed the letter of May 4, 1967 plaintiff intended to remain in the premises either under the so called option or by negotiation of a new lease.
It is clear and explicit from the copy of Bienville Club’s letter of May 3, 1967 which plaintiff had in his possession, that his permission for the erection of the stands extended “during the 1968 carnival season and annually thereafter” and that it was his intention that this permission would be effective for whatever length of time he was able to remain in the premises under his so called option or under a new lease which he intended to negotiate.
Plaintiff made no mention of his dissatisfaction with the construction of the stands until after he had succeeded in obtaining the new lease commencing May 1, 1968. Since the hotel had obligated itself to permit Bienville Club to erect the stands it may likely have refused to grant plaintiff a new lease had his objections been known. It is clear from plaintiff’s own testimony that his purpose in signing the agreement was to keep in the good graces of the hotel so that he might be permitted to continue his occupancy of the premises beyond April 30, 1968. We are of the opinion that this was sufficient “cause” or “motive” to (see LSA-C.C. Art. 1896) support the agreement.
Plaintiff contends that the agreement which he signed on May 4, 1967 was a modification of his initial lease only, and that this is proved by the fact that he refused to sign a similar agreement which was presented to him by the hotel when the new lease was signed. The new lease was executed on May 31, 1968 (retroactive to May 1, 1968). The record does not reveal the date plaintiff was requested to sign the agreement referred to by him. The unsigned agreement is not dated but it is clear from the language therein employed that it was presented to him after the lease had already been executed for it recites that “In and for the consideration of a lease, executed between the parties on the 31st day of May, 1968, Mrs. Sylvia W. Evans and Vance H. Evans agree that they have no objection to the erection of a carnival reviewing stand by Bienville Club along Royal Street during the 1969 parade season and annually thereafter.”
We quote with approval the following excerpt from the Trial Judge’s written “Reasons for Judgment”:
“There is no doubt in the Court’s mind that the petitioners herein were fully aware that their permission extended beyond the 1968 carnival season, for the words ‘annually thereafter’ can have but one interpretation. Having granted this permission, they cannot now seek to set aside a contract that they voluntarily acquiesced in and in which the Bien-ville Club, relying upon petitioners’ acquiescence and permission, has expended monies in the obtaining of the permits and the purchase of certain parts of the stands and the labor involved in the putting up and taking down of the stands for the past two Mardi Gras seasons.”
We are of the opinion that the equities of this case are In favor of the defendants.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiffs-appellants.
Affirmed.